IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE GENE SOLOMON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-cv-875-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Carrie Gene Solomon ("Plaintiff" or "Solomon") applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq.*, on October 22, 2008.  Tr. 19.  After being denied on February 2, 2009, Solomon timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on December 9, 2010.  Tr. 19, 31.  Solomon subsequently petitioned for review to the Appeals Council who rejected review of Solomon's case on August 16, 2012.  Tr. 1.  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *Id.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Solomon seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Solomon, age 47 at the time of the hearing, has completed the 12th grade, and is able to read and write.  Tr. 29.  Solomon has no past relevant work, but has worked as a server (semi-skilled, light), cook (medium), counter service (light), waitress (light), car washer (unskilled, medium), and housekeeper (unskilled, light).   Tr. 29, 72-73. Solomon's alleged disability onset date is June 1, 2002.  Tr. 19.  Solomon has not

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

engaged in substantial gainful work activity since October 22, 2008, the application date. Tr. 21. The record is insufficient to determine if Solomon meets the insured status requirements of the Social Security Act. Solomon claims she is unable to work because of lupus, high blood pressure, heart failure, asthma, and breathing problems. *See* Doc. 12 at 1-2; Tr. 27.

Solomon received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners.[5] Despite alleging a disability onset date of June 1, 2002, the medical records begin in January of 2006. Tr. 373. On January 15, 2006, Solomon sought treatment from Baptist Medical Center South with complaints of "productive cough, nausea, and weakness lasting several days." Tr. 22, 402-03, 411-15. Solomon was diagnosed with congestive heart failure with bilateral pleural effusions, history of systemic lupus erythematosus, renal insufficiency, hypertension, asthma, and alcohol abuse. *Id.* Solomon's left ventricular ejection fraction was at 25%. Solomon was put on a series of medication and her condition stabilized after a few days. *Id.* Solomon was discharged and instructed to follow up with her primary care physicians; however, the records do not indicate that a follow-up appointment was made. *Id.* The doctor's notes state that Solomon has a history of non-compliance, and is a heavy drinker and smoker. *Id.*

On February 18, 2006, Solomon was admitted to the emergency room ("ER") at Jackson Hospital and Clinic for two months after she went into respiratory failure. Tr.

---

[5] Solomon has several records that were solely for the purpose of high blood pressure or lupus follow up appointments, as well as a few for unrelated or extraneous treatment that the Court has reviewed, but will not discuss in detail.

22, 289.  Solomon was found to also have congestive heart failure and pneumonia.  Tr. 22.  Solomon was intubated, sedated and paralyzed, and placed on a mechanical ventilator.  Tr. 22, 288.  Solomon tested positive for cocaine, opiates, and benzodiazepines.  *Id.*  Solomon underwent a pericardial window placement, and had abdominal surgery for a ruptured spleen.  Tr. 22.  Solomon went into renal failure after the abdominal surgery and required dialysis.  *Id.*  Solomon also developed severe ascites and had to have 6,000 mL of fluid removed from her abdomen.  *Id.*  Solomon was on antibiotics for over a month, and her condition slowly began to improve to the point that a diet was gradually introduced and she was able to begin physical therapy.  *Id.*  On April 5, 2006, Solomon was discharged with notes indicating that her condition "significantly improved," and her recovery was described as miraculous.  Tr. 22, 286, 290-292.  Solomon was warned of the severe dangers she must face if she chooses to continue to abuse cigarettes, alcohol, and drugs.  Tr. 22, 292.

On October 13, 2006, Solomon was hospitalized again at Jackson Hospital and Clinic with abdominal pain.  Tr. 22, 267-269.  A chest x-ray and CT scan revealed nodules, some of which were cavitaries.  Tr. 268.  It was also noted that Solomon's white count and blood pressure were both high.  *Id.*  Solomon was discharged on October 22, 2016 with diagnoses of pulmonary nodules, ovarian cysts, hypertension, lupus, and leukocytosis.  Tr. 22, 268.  The doctor adjusted Solomon's medication, scheduled three consult appointments, and counseled her about the effects of smoking, drug abuse, and alcohol use and Solomon was advised to immediately cease use of all of them.  *Id.*  However, it was later noted that Solomon again failed to show up to her consult

appointments.  Tr. 263.

On April 29, 2007, Solomon returned to Jackson Hospital with complaints of a severe headache, blurred vision, tinnitus, and nausea.  Tr. 22, 258-66.  Solomon was admitted to the ER with a high blood pressure of 220/108, and she was administered medication that got her blood pressure under control.  Tr. 265.  Solomon said she had not taken her medication in six days because they were not brought to her.  *Id.*  Solomon was diagnosed with accelerated hypertension, congestive heart failure ("apparently stable"), systemic lupus orythematosus, and chronic kidney disease, stage III.  Solomon was prescribed several medications, and rescheduled for one of the consult appointments that she previously failed to attend.  Tr. 263-266.

On December 25, 2007, Solomon was admitted into the ER at Baptist Health with complaints of high blood pressure and pain in the back of her head.  Tr. 393-95.  Solomon's blood pressure was 237/129 and her creatinine was 2, and she admitted that she had not been taking her medication for at least a month because she ran out again.  *Id.*  Solomon was given medication to get her blood pressure under control, and the doctor noted that the pain in the back of her head is likely secondary to her hypertension, but it could be a migraine or tension headache if it is not alleviated once her blood pressure is under control.  *Id.*  She was counseled on the effect smoking, narcotics, and alcohol use has on her conditions.  *Id.*  On December 27, 2007, Solomon returned to the ER at Baptist Health again with uncontrolled hypertension and pain in the back of her head.  Tr. 22, 385-86.  Solomon mentioned that she is getting her Medicaid reinstated, so she can get her medication.  *Id.*  After being given medication, Solomon's blood pressure and

creatinine improved and the doctor noted that he expects this "trend will continue." *Id.* Solomon was then discharged in stable condition with a follow up scheduled for January 3, 2008. *Id.*

Solomon's medical records for 2008 are sparse; consisting of only a blood pressure follow up in June and an ER visit in November with complaints of rashes. Tr. 376-82, 688-89.

On January 14, 2009, Solomon saw Dr. James O. Colley ("Dr. Colley") at MDSI Physician Services for a consultative examination. Tr. 23, 450. Solomon said that she quit crack cocaine a year prior, but she still drinks and smokes cigarettes, although she has cut down to ten cigarettes per day from two packs per day. Tr. 23, 451. Solomon complained of current pain in her arms and legs, as well as muscle spasms. *Id.* Solomon stated that she has a history of althralgias and asthma with her last asthma attack being in May 2008, although she still suffers from shortness of breath and dyspnea on exertion. Tr. 23, 452. Solomon said that she could walk two blocks before having breathing problems, but cannot walk up stairs at all. *Id.* She stated that she can stand for thirty minutes at a time and has no trouble sitting. *Id.*

Dr. Colley noted that Solomon was cooperative, gave good effort, and "surprisingly appeared rather energetic." Tr. 23, 453. Dr. Colley further stated that Solomon was comfortable, in no acute distress, and had no difficulties standing up, getting on the examination table, or taking off and putting on her socks and shoes. *Id.* Upon examination, Solomon had normal gait and station, was able to squat down 100% and rise without assistance, could tandem walk on her heels and toes, and is not in need

of an assistance device.  Tr. 23, 454-55.  Solomon's straight leg test was negative; her grip, upper, and lower strength were all 5+/5; her deep tendon reflexes were normal; her muscle bulk and tone were normal; her sensory exam was normal; and there was no atrophy.  Tr. 23, 456.  Dr. Colley diagnosed Solomon with uncontrolled hypertension, compensated congestive heart failure, lupus, incisional hernia, and tobacco/substance abuse.  *Id.*

On July 18, 2009, Solomon sought treatment at Baptist Health with complaints of left side chest pain.  Tr. 553-55.  Solomon initially denied smoking, drug and alcohol use; however she tested positive for cocaine and alcohol and the doctor noted her record indicates that she smokes a pack of cigarettes a day.  *Id.*  The doctors speculated that the chest pain was secondary to cocaine use, but they treated her for high blood pressure and pneumonia due to left upper lobe infiltrates.  Tr. 547-48.  Solomon was again counseled for her substance abuse and informed of the likely risk of heart attack and stroke, and was provided information on rehabilitation.  Tr. 548.  Solomon stated that she would initiate the process to go to rehab after speaking with her primary care physician.  *Id.*  On July 30, 2009, Solomon saw Adedoyin B. Dosunmu Ogunbi, M.D. ("Dr. Ogunbi"), her primary care physician, for a follow up on her high blood pressure.  Tr. 682-83.  There is no mention of Solomon's previous hospitalization or discussion of rehab in Dr. Ogunbi's records.  *Id.*

On August 3, 2009, Solomon was admitted into the ER at Baptist Health with complaints of abdominal pain, nausea, and vomiting.  Tr. 23, 513-45.  Solomon's physical examination revealed negative fair air entry bilaterally with no shortness of

breath, and her strength was 5/5 in both her upper and lower extremities.  Tr. 526.  The doctors found a small bowel obstruction, and diagnosed her with acute renal failure.  Tr. 531.  The doctor noted that she refused to provide her medical history, and was frequently noncompliant with attending follow up appointments.  Tr. 530.

On August 22, 2009, Solomon was admitted into the ER at Baptist Medical Center South with complaints of abdominal pain again.  Tr. 697-700.  Solomon underwent an exploratory laparotomy with lysis of adhesions, biopsy of peritoneal mass, biopsy of the liver mass, and the repair of ventral incisional hernia.  Tr. 697-98.  The biopsy of Solomon's peritoneum revealed fat necrosis, and the biopsy of her liver revealed granulomatous inflammation with focal calcification; however, no fungal organisms were noted.  Tr. 698.  Solomon was diagnosed with acute renal failure with chronic kidney disease, controlled hypertension, hypomagnesia, hypocalcemia, anemia, leukocytosis possibly secondary to steroids, and SLE with chronic prednisone therapy.  *Id.*  Solomon was discharged "in good condition" and was instructed to schedule follow up appointments.  Tr. 699.

On June 14, 2010, Solomon was admitted in the ER at Jackson Hospital and Clinic with complaints of abdominal pain.  Tr. 23, 584-96.  A CT scan of Solomon's abdomen and pelvis revealed colonic diverticula, pseudocyst in her left ovary, and pulmonary nodules.  Tr. 591, 595, 611-13.  Solomon was diagnosed with acute pancreatitis.  Tr. 591.  The doctor noted that Solomon admitted to consuming alcohol prior to the onset of symptoms; however, she initially denied drinking any alcohol.  *Compare* Tr. 586, 594 *with* Tr. 591.  The doctor made further note of the fact that Solomon has a history of

recurrent pancreatitis secondary to alcohol use.  *Id.*  Solomon was treated with medication, and discharged once her condition improved.  Tr. 592.

On July 29, 2010, Solomon saw Dr. Ogunbi with complaints of chest pain, and high blood pressure.  Tr. 671.  Dr. Ogunbi found that Solomon has "hypertensive heart disease, benign, with heart failure;" chronic kidney disease, stage IV; leiomyoma of her uterus; ovarian cyst; and gastroesophageal reflux ("GERD").  Tr. 672.

On August 12, 2010, Solomon went to a follow-up appointment at Renal Associates of Montgomery regarding her chronic renal failure and proteinuria.  Tr. 487-488.  The doctor found that Solomon may suffer from proteinuria, diabetes mellitus type II, lupus, and cardiomyopathy NOS.  Tr. 488.  Solomon was scheduled for a follow-up appointment for the following week to have labs done; however, it does not appear from the records that Solomon kept her appointment.  Tr. 488.

On September 5, 2010, Solomon was admitted into the ER at Baptist Health due to severe abdominal pain that began the previous day.  Tr. 491-500.  The doctors noted that the prior day was Solomon's birthday and that she admitted she drank about four or five bottles of beer prior to the onset of her symptoms.  Tr. 496.  Solomon was discharged in stable condition on September 10, 2010 with diagnoses of acute pancreatitis, hypertension, acute renal failure, chronic kidney disease, lupus, vaginitis, and polysubstance abuse.  Tr. 491.  The doctor scheduled Solomon for a follow up nephrologist appointment and noted that due to her continued noncompliance and polysubstance abuse, she will likely end up on dialysis.  Tr. 498.

On October 11, 2010, Solomon was admitted into the ER at Jackson Hospital with

complaints of flank pain.  Tr. 617-31, 637-38.  The doctor noted that Solomon appeared to be intoxicated when she arrived.  Tr. 620.  Solomon was diagnosed with recurrent pancreatitis, clinical acute intoxication, splenectomy, lupus, and chronic renal failure.  *Id.* Solomon was placed on an IV and oral food and fluids were withheld, and it was noted that the pain lessened after a few hours.  Tr. 627.  On October 12, 2010, Solomon was in stable condition and transferred from the Medical/Surgical Unit to Jackson Hospital and Clinic.  Tr. 626-31.  At this time Solomon admitted to drinking alcohol for the previous four or five days.  Tr. 629.  The doctor found that Solomon's pancreatitis is probably secondary to her continued alcohol abuse, and he counseled her to abstain from alcohol completely.  Tr. 631.  The doctor slowly introduced food as Solomon's condition improved, and she was discharged on October 15, 2010.  Tr. 627.

After review of the medical records, the ALJ found the following severe impairments:

> [H]istory of hypercalcemia; anemia; recurrent abdominal incisional hernia; status post ruptured spleen with splenextomy; exploratory laparotomy with tracheotomy February 2006; acute renal failure with multiple hospitalizations 2006-07; arthralgias with osteoarthritis; systemic lupus erythematosus; non-ischemic cardiomyopathy with congestive heart failure; asthma with breathing problems (reduced expiration per pulmonary function tests); hypertension, poorly controlled, secondary to kidney disease; chronic kidney disease, stage IV, July 2009; diabetes mellitus type II; hypermagnesemia; acute pancreatitis; bowel herniation with obstruction; and history of polysubstance abuse.

Tr. 21.  The ALJ found that Solomon "has the residual functional capacity to perform sedentary work," with the exception of several limitations.  Tr. 26.  The ALJ found that Solomon has no past relevant work.  Tr. 29.  The ALJ then found that considering

Solomon's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." *Id.*

## V. ISSUES

Solomon raises one issue for judicial review:

(1) Whether the ALJ's RFC assessment is based on substantial evidence.

*See* Doc. 12 at 6.

## VI. DISCUSSION

**A.    The ALJ's RFC assessment is based on substantial evidence.**

Solomon presents a single sweeping assertion that the ALJ's RFC assessment is not based on substantial evidence, but as best as the Court can discern, she actually asserts three separate sub-issues.

*i.        The record was not complete at the time of Solomon's adjudication.*

Solomon argues that the record was not complete at the time of her adjudication as evidenced by the fact that four sets of medical records were entered by the Appeals Counsel "without explanation." *See* Doc. 12 at 8.  This argument is completely without merit considering current counsel for the plaintiff submitted a letter to the Appeals Counsel dated April 17, 2012 in which they admit these records were simply not exhibited correctly, but were available to the ALJ at the time of the adjudication.  Tr. 256. In the letter, counsel for the plaintiff stated:

> At the hearing the Exhibits did not have numbers, and one of the Exhibits was 43 pages of records from Dr. Doyin Ogumbi [sic] from May 9, 2008 to July 29, 2010. Although these records were not listed on the Exhibit List, we know that the [ALJ] had them because he referred to the Stage IV kidney disease in the decision.

*Id.*   The Appeals Counsel subsequently exhibited these records in the certified administrative record as Exhibits 11F through 14F.  *See* Doc. 15 at 2, n. 2.

> ii.   *The record lacks a medical source opinion by any physician of record, and the ALJ failed to order a consultative examination to obtain one.*

Solomon argues that the "ALJ's RFC findings are not based on substantial evidence because there is no medical source opinion ("MSO") by any physician of record, examining or reviewing."  *See* Doc. 12 at 7.  Solomon admits that there is no requirement for a RFC assessment by a physician to be in the record or for the ALJ to order a consultative examination to allow the ALJ to properly make his RFC findings. *Id.*  However, Solomon avers that since the ALJ limited Solomon to sedentary work with limitations, a RFC assessment completed by a physician would provide an accurate accounting of Solomon's abilities, limitations, and restrictions.  *Id.*  The Government responded that the "agency's regulations and rulings make it abundantly clear that it is the ALJ's responsibility to assess a claimant's [RFC]."  *See* Doc. 15 at 9.

"After careful consideration of the entire record," the ALJ found that:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a).  Specifically, I find that the claimant is able to lift or carry 15 pounds occasionally and 8 pounds frequently.  I find she can stand or walk for four hours each out of an eight-hour workday, and she can sit for six hours out of an eight-hour workday, with a sit/stand option, as follows: the claimant's sit/stand option must be consistent with the exertional limitations I have described; she cannot be off task more than 5% of the work period and, besides standard employee break, she cannot leave the workstation; she can sit in 45 to 60-minute time segments and, to relieve a period of sitting, she can stand or walk in 1 to 5-minute time segments; she is allowed any additional standing and walking, consistent with exertional limits I have described, interspersed throughout the rest of the workday.  She can occasionally use her upper extremities

bilaterally for pushing/pulling and she can occasionally use her lower extremities for the operation of foot controls.  Also, I find that she cannot climb ladders, ropes or scaffolds.  However, I find that she can occasionally climb ramps or stairs but no more than four to six stairs at any one time. She cannot crouch but she can frequently balance and she can occasionally kneel or crawl.  Further, I find she can stoop for ½ of the work period (quantified as four hours out of an eight-hour workday).  I find she must avoid concentrated exposure to extreme cold/heat, wetness/humidity, and excessive vibration, and she must avoid even moderate exposures to environmental irritants (such as fumes, odors, dusts, gases), poorly ventilated areas, and chemicals.  In addition, she must avoid all exposure to hazards such as the use of moving machinery and exposure to unprotected heights.  Her job must not involve the handling, sale, or preparation of alcoholic beverages or access to narcotic drugs.  Lastly, I find he work is limited to simple, routine, repetitive tasks and it must not involve any production rate or fast-paced work.

Tr. 26.  At this point in the five-step, sequential evaluation the burden is on the claimant to prove that she is disabled.  *Jones*, 190 F.3d at 1228 (citing 20 C.F.R. § 416.912 (1998)); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ('RFC'); and (2) the claimant's ability to return to her past relevant work."  *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).  To determine the claimant's RFC, the ALJ "must determine if the claimant is limited to a particular work level." *Id.*  To be deemed capable of performing sedentary work, the claimant must have the ability to "lift no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and "walking and standing are required occasionally."  20 C.F.R. § 404.1567(a).  "Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is

reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (citing 20 C.F.R. §§ 404.1513, 404.1527, 404.1545).

In *Green*, the ALJ discredited the only physician RFC assessment that was in the record, and the plaintiff argued that the ALJ lacked substantial evidence to base his RFC assessment without a physician's RFC. *Id.* The Eleventh Circuit stated that even without considering a physician's RFC assessment, the record indicated that she was managing her impairments well, and her symptoms were controlled. *Id.* at 923-24. As a result, the Eleventh Circuit found that "substantial evidence supports the ALJ's determination that Green could perform light work." *Id.* at 924. Similarly, in *Griffin v. Astrue*, the plaintiff argued that a physician's RFC assessment was required. 2008 WL 4417228, *9 (S.D. Ala. Sept. 23, 2008). The court found that despite not having a physician's RFC, the ALJ's RFC was "supported by the claimant's treating physicians, as well as the absence of functional limitations placed on the claimant by any medical source." *Id.* at *10. The court noted that "[w]hile Plaintiff asserts that a physician's RFC assessment was required, she has not demonstrated that the ALJ did not have enough information to enable him to make a RFC determination, nor has she pointed to any medical evidence which suggests that the ALJ's RFC assessment is incorrect." *Id.* The court ultimately held that "substantial evidence supports the ALJ's determination that Plaintiff possesses the RFC to perform light work" because the medical records demonstrated that despite having severe impairments, her condition was stable and controlled with medication. *Id.* The court also found that the medical records did not reveal any evidence of functional limitations, and none of the plaintiff's physicians limited her activities. *Id.*

After review of the ALJ's opinion, it is clear to this Court that the ALJ carefully considered the medical evidence in the record when determining Solomon's RFC. The Court recognizes that the record lacks a physical RFC assessment completed by a physician. A RFC assessment is used to determine the claimant's capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). A RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis*, 125 F.3d at 1440.

At a hearing before an ALJ, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988). "The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision." *Nation v. Barnhart*, 153 Fed. Appx. 597, 598 (11th Cir. 2005) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)); *see also Griffin*, 2008 WL 4417228, at *10 (citing 20 C.F.R. § 416.912(d)) ("The ALJ is bound to make every reasonable effort to obtain all the medical evidence necessary to make a determination [. . .]; however, he is not charged with making Plaintiff's case for her"). As previously

stated, Solomon "has the burden of proving that she is disabled." *Id.* (citing 20 C.F.R. §

416.912(a) and (c); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The lack of a

physician's RFC assessment in the record falls upon the claimant; the duty to obtain

sufficient medical records to make a disability determination falls upon the ALJ.

> Here, the ALJ found that Solomon suffers from the following severe impairment:

> [H]istory of hypercalcemia; anemia; recurrent abdominal incisional hernia;
> status post ruptured spleen with splenextomy; exploratory laparotomy with
> tracheotomy February 2006; acute renal failure with multiple
> hospitalizations 2006-07; arthralgias with osteoarthritis; systemic lupus
> erythematosus; non-ischemic cardiomyopathy with congestive heart failure;
> asthma with breathing problems (reduced expiration per pulmonary
> function tests); hypertension, poorly controlled, secondary to kidney
> disease; chronic kidney disease, stage IV, July 2009; diabetes mellitus type
> II; hypermagnesemia; acute pancreatitis; bowel herniation with obstruction;
> and history of polysubstance abuse.

Tr. 21.  However, the ALJ determined that

> [a]fter careful consideration of the evidence, I find that the claimant's
> medically determinable impairments could reasonably be expected to cause
> the alleged symptoms; however, the claimant's statements concerning the
> intensity, persistence and limiting effects of these symptoms are not
> credible to the extent that they are inconsistent with the [RFC] assessment.

Tr. 27.  The ALJ took particular note of Solomon's persistent drug and alcohol abuse, her

daily activities, and her compliance with prescribed treatment.  Tr. 21.   Similarly, the

ALJ considered the credibility of the disabling degree of Solomon's impairments in light

of her treatment history, and the inconsistencies of her statements.  Tr. 27.

> First, the ALJ found that due to inconsistencies between Solomon's statements

regarding her symptoms and limitations, her contentions are "not wholly credible."  Tr.

27.  The ALJ focused on Solomon's conflicting statements made in the record and at the

hearing. *Id.* For example, the ALJ noted that in Solomon's Function Report she stated that she has to have help with all of her personal needs such as grooming, cleaning, and cooking. *Id.* However, just a month later, Solomon reported to Dr. Colley that she can take care of her personal needs, make the bed, and do laundry, but stated that she does not cook or sweep. Tr. 27, 452. Similarly, the ALJ noted that in her Function Report Solomon said she is unable to do any shopping; however, at the hearing, she testified that she does go grocery shopping. Tr. 27. The ALJ also noted that at the hearing Solomon testified that her most recent hospitalization was not due to alcohol consumption; however, the hospital records indicate that she admitted that she had been drinking for two days prior to the onset of her symptoms. Tr. 27-28, 629.

The ALJ also found that the record shows that Solomon "failed to follow prescribed treatment." Tr. 28. The ALJ found that the record is replete with instances of doctors advising Solomon to stop abusing alcohol, cigarettes, and drugs.[6] *Id.* Not only do the records clearly indicate that she continued to abuse alcohol, cigarettes, drugs and that these actions were the cause of Solomon's hospitalizations, she even admitted at the hearing that she continues to drink alcohol and smoke cigarettes. In addition, the medical records show that she tested positive for the use of crack cocaine just three months prior to the hearing, although she denied using crack cocaine. *Id.*

Despite these inconsistencies, the ALJ still found that Solomon's allegations of pain are entitled to some weight due to her diagnoses of multiple severe impairments. *Id.*

---

[6] The Court also notes that Solomon sought treatment on multiple occasion due to uncontrolled hypertension; however, when she was properly taking medication, she showed no signs of complications. Tr. 258-66, 393-95.

The ALJ ultimately held that "the medical evidence indicates that when the claimant is not using alcohol or drugs, her condition is stable." *Id.* The ALJ placed great weight upon Dr. Colley's medical opinion because at the time of his assessment, Solomon was not abusing drugs. Tr. 29. The January 2009 examination revealed an energetic and physically able patient.[7] Tr. 28. Solomon had no difficulty taking off her shoes and socks or putting them back on; no difficulty standing up or getting on the examination table; normal gait and station; was able to squat all the way down and rise without assistance; could tandem walk on her heels and toes; her grip, lower, and upper extremity strength was 5+/5; and her sensory exam and deep tendon reflexes were normal. *Id.* Accordingly, after consulting a VE, the ALJ found Solomon able to perform sedentary work and placed several work related restrictions to account for Solomon's impairments. Tr. 26-30.

The ALJ is responsible for determining Solomon's RFC, not a physician. Had Solomon received an assessment by a physician, the ALJ would have been required to consider that assessment in making his determination. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The [ALJ] has a duty to develop the record where appropriate but is not required to order [additional evidence] as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274,

---

[7] The ALJ noted that prior to Dr. Colley's examination in January of 2009, the record indicates that Solomon did not have any overnight hospitalizations in all of 2008. Tr. 28.

1281 (11th Cir. 2001)).  It is clear to this Court that the ALJ carefully considered the medical evidence in the record in determining Solomon's RFC, and the record contained sufficient evidence for the ALJ to make his decision.  Therefore, the Court finds that the ALJ's findings are supported by substantial evidence.

> *iii.    Solomon was subsequently found to be disabled which proves that long term recovery was not expected to a degree sufficient to restore the ability to work.*

Finally, Solomon argues that her subsequent disability determination serves as evidence that the ALJ's RFC assessment was not supported by substantial evidence because long term recovery was not likely to be expected to a degree sufficient to restore the ability to work.  *See* Doc. 12 at 8.  Solomon points to the fact that the ALJ noted "the anticipation of the need for dialysis" as a result of her Stage IV Chronic Kidney Disease.  *Id.*  Solomon attached a copy of her subsequent favorable decision for this Court's review.  *See* Doc. 12-1.

The Government correctly asserts that the sole basis for jurisdiction of this Court is to review the Commissioner's final decision denying Solomon's disability benefits under 42 U.S.C. § 405(g).  *See* Doc. 15 at 12.  The Government is also correct that the evidence this Court may consider is limited to the transcript of record and the parties' pleadings.  *Id.*  Section 405(g) of the United States Code provides in relevant part:

> As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. [. . .] it may at any time order additional evidence to be

> taken before the Commissioner of Social Security, *but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.*

42 U.S.C. § 405(g) (emphasis added).  Thus, the Court may consider new evidence that is not in the record only upon a request of a Sentence Six Remand coupled with a showing that the new evidence is material and there is good cause why the claimant failed to incorporate the evidence into the record at an earlier stage.  *Id.*

Here, Solomon did not request a Sentence Six Remand, nor has she properly argued that there is new evidence that was not before the ALJ.  Courts have found that "a later award of benefits does not legally impact the review of a prior application for benefits[.]"  *Stokes v. Astrue*, 8:08-CV-1657-HTS, 2009 WL 2216785 (M.D. Fla. July 23, 2009) (quoting *Telesha v. Barnhart*, 3:01–CV–2371, 2003 WL 22161584, at *9 n. 7 (M.D. Penn. Mar. 31, 2003)).  In *Dickson v. Astrue,* the Court found that "a different result on a subsequent application for disability is not material to the previous finding" even where the subsequent application determined that the claimant was disabled beginning the day after the ALJ's non-disabled determination.  5:07-CV-28-HLJ, 2008 WL 829206, at *1 (E.D. Ark. Mar. 26, 2008) (citing *Bruton v. Massanari,* 268 F.3d 824, 827 (9th Cir. 2001)).

It has further been held that a subsequent award "is not evidence of the plaintiff's condition on or before the date of the ALJ's decision [. . .] the fallacy in this argument is that the subsequent award of benefits says nothing about the plaintiff's condition during the *entire* period being considered under the plaintiff's current application."  *Howard v.*

*Astrue*, 07-CV-144-GWU, 2008 WL 108776 (E.D. Ky. Jan. 9, 2008) (emphasis in original). Thus, it is clear that a subsequent disability finding involving a new time period and new medical evidence does not impact a previous application period. The ALJ properly considered the record in full as it was before him at the time of his December 9, 2010 decision.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 21st day of March, 2014.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE